ANANIAS DIVERS *vs.* JAMES FULTON.—*December*, 1836.

The defendant having given notice to the plaintiff's attorney, at 4 o'clock, P. M. on Monday the first day of the term, to produce a paper to be read in the trial of the cause, which came on, on the following Wednesday; it was held to be sufficient notice to let in secondary evidence of its contents, though it was admitted that the paper was in the possession of the plaintiff himself, and that the attorney did not see him until the intervening Tuesday, at a quarter past 4 o'clock, P. M.

Before secondary evidence of the contents of a written instrument can be offered, the notice to produce the original must appear to the court to be reasonable in point of time, so as to give the adverse party an opportunity to produce the paper called for.

Where evidence had been offered for the purpose of establishing a parol gift of a negro slave by a deceased testatrix to the plaintiff; and the defendant had read to the jury a letter from the plaintiff to him, written subsequently to the date of the will of the testatrix, inconsistent with the idea of exclusive property in the plaintiff; the defendant was permitted to read the will, though executed after the alleged gift, for the purpose of explaining the plaintiff's letter, and showing his recognition of the right of the testatrix to bequeath the property.

APPEAL from *Harford* county court.

This was an action of *replevin*, commenced on the 13th November, 1833, by the appellant against the appellee, for a negro woman named *Phillis*, and her child, *Lucinda*. Issues were joined upon the pleas of *non cepit*, and property in *Fulton*, the defendant.

At the trial the plaintiff gave in evidence that *Mrs. Martha Amos*, a widow, being possessed as owner of sundry negroes, and having broken up housekeeping some time in the autumn of 1828, placed her negroes with her son, *Joshua Amos*, and

about that time distributed them among her several daughters; and further offered evidence by *Daniel Amos*, that in the autumn of 1828, some time in the month of September, the said *Martha* told the witness, that she meant, that her several negroes should go to several places; that negro *Phillis*, (the negro in controversy,) was at that time at the house of *Divers*, the plaintiff, and that there she would stay. That she mentioned to the witness in the same conversation, that the rest of the negroes whom she named as belonging to her, she had placed with her other daughters; with whom and in whose service they had remained ever since the fall of 1828, until the death of the said *Martha*, which happened in April, 1832; and that she owed no debts when she died. And the plaintiff further proved, that in the autumn, 1828, negro *Phillis* left the house of *Martha Amos* aforesaid, with all her clothes and things, in the carryall of the plaintiff, with him and his wife, who was the daughter of said *Martha*, and remained in their service till the death of said *Martha*; and never was off the farm of the said plaintiff from 1828 until about two days before this replevin was issued, when she went to the house of the defendant, of whom the plaintiff demanded her, but the defendant refusing to deliver her, this replevin was issued. The plaintiff here rested his case, having first admitted that the defendant was the administrator of the said *Martha Amos*, duly constituted, appointed and qualified according to law. And thereupon the defendant to maintain the issue on his part, offers in evidence and read to the jury, the following note or letter of the plaintiff.

"Mr. James Fulton,

*Philas* is in *sarch* of a master, as *shee* cant *serv* three at *wounst*, she wants to stay in the family. I am willing to take forty dollars for my *shear* of *here*, or I will give forty, if she is willing to stay with me. I am willing to give *here* that chance.                         Ananias Divers."

*April 24th*, 1832.

And then offered to give in evidence the contents of a paper writing, purporting to be a petition to the Orphans

court of *Harford* county, filed in said court by the said plaintiff, on the 17th day of April, 1833, having first proved, and it being admitted that notice to produce the original petition, or paper, was given by the defendant to the attorney of the plaintiff at 4 *o'clock*, P. M. on the Monday before the trial of this cause, the said Monday being the first day of the trial term ; but that the said attorney did not see the plaintiff until a quarter past 4 o'clock, P. M. on Tuesday, the next day, when he informed him of said notice, and the trial took place on Wednesday, the next day ; it being admitted, that the said original petition or paper writing was in the possession of the said plaintiff. To the admissibility of which proof so offered by the defendant, the plaintiff objected for the want of due notice to produce the original paper ; but the court (*Magruder, A. J.*) over-ruled the objection, and admitted the proof of the contents. The plaintiff excepted.

And thereupon the defendant offered evidence by *Samuel Bradford*, who was admitted to be a judge of the Orphans court of *Harford* county, and by *Thomas T. Bond*, who was admitted to be register of wills of said county, that on the 17th April, 1833, a paper was filed in the said Orphans court by the plaintiff himself, who a few days before the trial of this cause, called in person at the office of the said register of wills, and demanded the delivery to him of the said original paper, which original was admitted to be the petition or paper, the production of which on the trial of this cause was required by the notice herein before mentioned, as having been given to the counsel of said plaintiff ; and the defendant further offered in evidence by said *Bradford and Bond*, that they refused to deliver to said plaintiff the said original paper until they could take a copy thereof, which was accordingly done by one of them, and which copy was by both of them carefully compared with said original in the presence and hearing of said plaintiff, to whom the said original was then delivered ; and which said copy is as follows :

" To the honourable the Orphans court of *Harford* county, we the undersigned, heirs at law of *Martha Amos*, late of

*Harford* county, deceased; *Humble* states, that there are sundry negroes the property of the said deceased, which have not been appraised, in consequence of their not having been mentioned in the will of said deceased, and that such property as has been bequeathed is appraised, and an order for sale, which we think unfair, and humbly prays that your honours will countermand said order and grant relief, by directing the administrator to have the property appraised which was not named in the will, to wit: a negro girl named *Mary*, in possession of *James Fulton*, a negro boy named *Harry*, in possession of *Martha McComas*, two negro boys named *John* and *Sandy*, in possession of *Ananias Divers*.

DANIEL AMOS,

AQUILA AMOS,

JOSHUA AMOS,

BENJAMIN S. AMOS,

ANANIAS DIVERS."

This copy was certified by the register under the seal of the Orphans court, aforesaid, to be a true copy.

And the defendant then offered to read in evidence to the jury, the following paper, being the last will and testament of the said *Martha Amos*, bearing date the 2d day of April, 1832.

" Whereas, I, *Martha Amos*, of *Harford* county and *State of Maryland*, hath heretofore disposed of the principal part of my personal estate, and delivered the items to the persons intended by me to possess the same; and the remainder of my property, I wish at my decease to be delivered to the persons as named in the following memorandum, or last will and testament. " That is to say, I give to my three daughters *Martha McComas, Hannah Fulton*, wife of *James Fulton*, and *Elizabeth Divers*, wife of *Ananias Divers*, my negro woman, *Phillis*, to work alternately and equally between them, and they to be at equal expense in her clothing and support, and also at equal expense in her support if she should become infirm, or from any cause be rendered unable to labour for them to profit, and each one shall make their election at my

decease, whether they will take this legacy or donation sub-
ject to the incumbrance, and such election shall thereafter be
binding on them respectively.    And lastly," &c.

The same being admitted to be a duly authenticated copy
of said will, duly admitted to probate.    But the plaintiff
objected to the admission in evidence of the said will, upon
the ground, that it was an act or declaration of the testatrix,
done or made after the date of the alleged gift or distribution
of the said negro Phillis, herein before given in evidence.
But the court over-ruled the objection, and received the will
in evidence.  The plaintiff excepted; and the verdict and
judgment being against him he appealed to this court.

The cause was submitted on notes to the court, Bucha-
nan, Ch. J., Stephen, Archer, Dorsey, Chambers, and
Spence, Judges.

J. D. Maulsby for the appellant.

This is an action of replevin from Harford county court
for a negro women named Phillis, and her child, Lucinda,
tried at the March term of that court, 1835.

The plaintiff (Divers,) claimed the negroes, as a gift from
Martha Amos, to her daughter, the wife of the plaintiff.

There were at the trial several exceptions taken, which
are to be found in the record; all of which, except one, are
submitted without remark.

The objection of the plaintiff is to the admission by the
county court of the will of Martha Amos (the donor,) to be
read in evidence by the defendant to the jury without any
direction whatever, qualifying the evidence or specifying the
purpose for which alone it might be regarded by the jury as
evidence.

The plaintiff having offered evidence of the gift of the negro
woman, and of his continued possession under that gift, the
defendant offered the will of the said Martha, (the donor,) in
which she otherwise disposed of the negro woman, and the
objection of the plaintiff is: that although acts of ownership

by *Martha,* after the gift, might have properly been given in evidence, yet that new *declarations* made by her, ought not to have been admitted.

The will was admitted by the court to be read, without any qualification whatever, and to this the objection of the plaintiff particularly applies.   The will must be regarded, not only as the *act,* but the *declaration of the donor,* made after the alleged gift.

It has been so often decided, and is now so well settled, that the *declarations* of a donor, made subsequent to the gift, are not evidence against the donee, as between the *parties themselves,* or their representatives, that it is not deemed necessary to refer to authorities.   The questions, therefore, involved in this case, are respectfully submitted.

O. Scott for the appellee.

The will of *Martha Amos,* it will be perceived was offered *in connection with two papers signed by the appellant.*   The first, a written proposition to purchase *Phillis,* the negro in question, and stating that she could not serve three at *one time.*   The will shows what is meant by three at once.   The negro, by the will is devised to three persons, one of whom is *Divers'* wife.

The other paper is a petition to the Orphans' court, requesting that the administrator may appraise the negroes therein named.   This paper refers to the will, and states that the reason that the negroes were not appraised was, that they were not named in the will.   Connected with these papers, the will was proper evidence.   It was necessary *to* explain what *Divers* meant, by the phrases, " *three at once* " and *his* " *share.*"

Stephen, Judge, delivered the opinion of the court.

In the course of the trial two opinions were delivered by the court below, to which the appellant excepted, and which the appeal in this case brings before this court for examination.   They both relate to the admissibility of evidence, and

the question raised upon the first bill of exception is, as to the sufficiency of the notice given to the plaintiff's attorney, to produce at the trial a paper in the possession of his client, to warrant a resort to secondary evidence of its contents, upon the failure or omission to produce it, at the trial in pursuance of such notice.   We think the court below were clearly right in the opinion expressed in the first bill of exception.   The notice was given to the attorney of the plaintiff at four o'clock on Monday; he communicated the fact to his client on Tuesday, and the trial of the cause took place on the following Wednesday.

This, we think, was a sufficient notice to entitle the plaintiff to use the secondary evidence, upon the defendant's failing to produce the primary proof called for.   It is true before secondary evidence of the contents of a written instrument can be let in, the notice to produce the original must appear to the court to have been reasonable in point of time, so as to give the adverse party an opportunity to produce the paper called for; but we think, that this rule has been complied with in the present case.   In *Roscoe on Ev.* 6, we find that a notice to produce a letter, served on the attorney of the party on the evening next but one before the trial, was ruled to be sufficient, though the party was out of *England;* the presumption being, that on going abroad the party had left with his attorney the papers necessary for the conduct of the trial.   We think that the court below were also correct in the opinion expressed in the second bill of exceptions, as the copy of the will offered in evidence was clearly admissible, as explanatory of the note written by the plaintiff to the defendant, in which he offers to sell his share of *Phillis* to the defendant, as she could not serve three at the same time.   By the will it appears, that the negro woman called *Phillis,* was given by their testatrix to her three daughters, of whom the wife of *Divers* the plaintiff was one.   This bequest it was, to which he evidently alluded when he said she could not serve three at the same time.   We therefore think, that taken in

connection with the letter of the plaintiff to the defendant, *Fulton*, who was the administrator of the testatrix, the will was legally admissible to go to the jury, for the purpose of showing his recognition of the legal validity of the bequest therein contained to his wife, and her three sisters. Finding no error in the opinion expressed by the court below in either bill of exception we affirm their judgment.

JUDGMENT AFFIRMED.